UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RAMON GUTIERREZ,

                Petitioner,

v.                                                       9:19-CV-0847
                                                       (GLS/ATB)

JAMIE LaMANNA et al.,

                Respondent.

---

APPEARANCES:                                     OF COUNSEL:

RAMON GUTIERREZ
Petitioner pro se
09-A-3702
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

GARY L. SHARPE
Senior United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

Petitioner Ramon Gutierrez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of New York, as well as the statutory filing fee and a memorandum of law in support of said petition. Dkt. No. 2, Petition ("Pet."); Dkt. Entry of May 14, 2019 (indicating receipt information for filing fee); Dkt. No. 3, Memorandum of Law ("Memo."). On May 17, 2019, the Southern District issued an order transferring the petition to the Second Circuit to determine whether petitioner was permitted to file a successive habeas petition. Dkt. No. 5.

On July 1, 2019, the Second Circuit determined that petitioner's proposed § 2254

petition was not successive because a new judgment had been issued, in May 2019, after the filing of his first habeas petition. Dkt. No. 8. The Second Circuit consolidated two cases together for purposes of its Order, and transferred both back to the Southern District. *Id.* On July 9, 2019, the Southern District transferred the action to this court. Dkt. Nos. 9, 10. That matter is presently pending for an initial review. For the foregoing reasons, petitioner is afforded thirty (30) days from this Decision and Order to update his address and file an affirmation regarding the issues discussed herein.

## II.   BACKGROUND

The petition indicates that petitioner is challenging a 2002 conviction, in Albany County Court, upon a jury verdict, for first degree criminal sale of a controlled substance and first degree criminal possession of a controlled substance. Pet. at 1-2. Petitioner explains that, while awaiting prosecution, he absconded back to his home in the Dominican Republic. Memo. at 2. While petitioner was gone, he was convicted in Albany County and sentenced to a term of twenty-two years to life. *Id.* In February 2008, the United States found petitioner and submitted an extradition request. *Id.* at 2-3. Petitioner contends that federal marshals then abducted him from the Dominican Republic, against the U.N. Convention, and transported him back to the United States on June 30, 2009. *Id.* at 1-2, 4. Petitioner was ultimately placed in New York State Department of Corrections and Community Supervision (DOCCS) custody on July 3, 2009. *Id.* at 5. Immigration and Customs attempted to deport petitioner, but the proceedings were ultimately terminated and, against petitioner's express wishes, his counsel advocated that petitioner be repatriated back to the Dominican Republic after serving his criminal sentence. *Id.* at 5-6.

Petitioner unsuccessfully brought a motion to vacate his judgment of conviction in April 2016, arguing that the state court lacked jurisdiction over petitioner given his forceful abduction, which violated the extradition treaty. Pet. at 3. Petitioner renews those allegations in the present petition, contending that he is entitled to habeas relief because: (1) his "forceful abduction after the Dominican Republic authorized his extradition constituted a treaty violation" (Pet. at 5-8); and (2) the Immigration and Customs inspectors erred in attempting to deport petitioner when they should have instead repatriated him, (*id.* at 8-14). Ultimately, petitioner seeks "immediate release," presumably from DOCCS custody whereupon he was incarcerated at the time the petition was filed. *Id.* at 1, 16.

## III. DISCUSSION

### A. Failure To Update Address

As a preliminary matter, a search of the Inmate Information Database maintained by DOCCS reveals that petitioner was released, pursuant to his maximum expiration date, on June 3, 2019 to Immigration. *See* DOCCS, Inmate Population Information Search, http://nysdoccslookup.doccs.ny.gov (last visited July 24, 2019). Thus, petitioner was released from custody, with no further conditions. Moreover, it appears petitioner was released to Immigration and Customs several weeks ago; therefore, he may have already been repatriated.

Rule 10.1(c)(2) of the court's Local Rules of Practice states, in relevant part, that "[a]ll attorneys of record and *pro se* litigants must immediately notify the Court of any change of address" (emphasis omitted). "Failure to notify the Court of a change of address in accordance with L.R. 10.1(b) may result in the dismissal of any pending action."

3

N.Y.N.Y.L.R. 41.2(b). As previously noted in this District:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty. Corr. Facility*, No. 6:95-CV-1525, 1996 WL 172699, at *1 (N.D.N.Y. Apr. 10, 1996) (*quoting Perkins v. King*, No. 84-3310, slip op. at 4 (5th Cir. May 19, 1985)). "As a matter of course, courts in this district have dismissed actions when litigants have failed to abide by either the Local Rules or orders related to address changes, and have subsequently failed to prosecute their actions." *Hill v. Donelli*, No. 9:05-CV-1245, 2008 WL 4663364, at *2 (N.D.N.Y. Oct. 20, 2008) (collecting cases); *see Jackson v. Rabideau*, No. 9:04-CV-1096, 2007 WL 911846, at *1 (N.D.N.Y. Mar. 22, 2007) ("United States Courts are vested with broad discretion to impose sanctions for non-compliance with court orders, and those sanctions can include the severe sanction of dismissing a case.").

Petitioner has not advised the court of any change of his address.

Courts in this district have relied upon "Rule 41(b) of the Federal Rules of Civil Procedure . . . [to] dismiss an action[, including a habeas petition,] based upon the failure of a plaintiff to prosecute the action, or comply with any order of the court." *Rosa v. Napoli*, No. 9:09-CV-0687, 2011 WL 6103473, at *1-2 (N.D.N.Y. Dec. 7, 2011) (citing cases).

> In determining whether involuntary dismissal . . . is appropriate, the Second Circuit considers five main factors, none of which is dispositive: (1) the duration of the plaintiff's failures; (2) whether the plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by

4

> further delay; (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and, (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*Ramadan v. Niagara County*, No. 6:12-CV-6425, 2014 WL 2865093, at *4 (W.D.N.Y. June 24, 2014) (citing *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).

After evaluating the aforementioned factors set forth by the Second Circuit, the court concludes dismissal is not yet appropriate. The duration of petitioner's failure is extremely short. He has been released from custody for approximately six weeks. This duration is far shorter than those which have resulted in dismissal in other similar cases. *See Ramadan*, 2014 WL 2865093, at *3 (holding that "[a] year is more than enough time [for petitioner] to fulfill his obligation under [the] Local Rule[s.]").

"The Second Circuit has emphasized the importance of first giving the *pro se* litigant a direct warning that his case will be dismissed for failure to further prosecute . . . However, any further attempt to notify [petitioner] would be futile as the Court has no means by which to contact [him]." *Ramadan*, 2014 WL 2865093, at *4 (citations omitted). While this logic seems to intimate that the second factor would also compel dismissal, the petitioner in *Ramadan* had not been at his last known address for over a year. The length of time that petitioner's whereabouts was unknown was far longer than the instant case. Moreover, it appears that petitioner may still be in the custody of some governmental authority, which may make it possible for his mail to be forwarded or allow for his ability to remain abreast of the developments in this case. Accordingly, keeping in mind the special solicitude granted to pro se litigants and the fact that petitioner has never expressly received any direct warning that failure to update his address would result in dismissal, it appears that the first two factors

5

marginally weigh in petitioner's favor.

"With respect to prejudice, petitioner's failure to update his address is effectively foreclosing [any possibility for r]espondent . . . [to be able] to defend this lawsuit." *Ramadan*, 2014 WL 2865093, at *4. This is indisputable. Thus, the third factor appears to weigh in favor of dismissal.

The fourth factor is less clear because, while it appears that "[t]he inability of the Court and respondent's counsel to communicate with petitioner means that the matter will remain pending indefinitely without the possibility of resolution," concluding the fourth factor definitively without giving petitioner warning and an opportunity to update his address, presuming he is still engaged and actively following the court's docket, is premature. *See Ramadan*, 2014 WL 2865093, at *4.

Finally, while the court has a vested interest in alleviating court congestion and preventing inefficiency, given the short delay of petitioner's failures as well as the lack of express notice of the consequences of failing to follow the Local Rules, the balance of factors do not compel dismissal at this time. However, should petitioner fail to update his address after being afforded the opportunity to do so, the sanction of dismissal will be appropriate.

Therefore, petitioner shall, within thirty (30) days of the filing of this Decision and Order, update his address with the court. Failure to do so will result in dismissal of this action without further order of the court for failure to prosecute and failure to comply with the court's orders.

**B.     Mootness**

Because petitioner has been released pursuant to reaching the maximum expiration of his sentence, it also appears that the action has been rendered moot. "Article III, Section 2

of the United States Constitution limits the subject matter of the federal courts to those cases which present a 'case or controversy.'" *Islam v. N.Y. State Bd. of Parole*, No. 9:13-CV-0854, 2016 WL 3943668, at *2 (N.D.N.Y. June 2, 2016) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Accordingly, "in order for there to be a valid exercise of subject matter jurisdiction, a federal court must have before it an actual controversy at all stages of review, not simply at the time it is filed." *In re Flanagan*, 503 F.3d 171, 178 (2d Cir. 2007).

> In the context of a habeas petition, a petitioner no longer in custody is required to demonstrate a "collateral consequence" of the detention that can be remedied by granting the writ. . . . When a habeas petitioner challenges the underlying criminal conviction, there is a presumption that collateral consequences exist. . . . However, where as in this case, the petitioner is not challenging the validity of his underlying conviction and his sentence has expired, collateral consequences are not presumed, and the petitioner has the burden of identifying some ongoing collateral consequence traceable to the challenge.

*Islam*, 2016 WL 3943668, at *2 (citing cases).

Here, despite petitioner's representation to the Second Circuit that he was resentenced in 2019, (Dkt. No. 8), petitioner is no longer in DOCCS custody. Additionally, while he claims to challenge his Albany County Court drug conviction, (Pet. at 1), the content of his petition revolves around the U.S. Marshals and their actions in kidnapping him and failing to respect the extradition decisions of the Dominican Republic, (*id.* at 5-14). Thus, despite the statutory provisions referenced in the action, petitioner does not appear to be challenging his underlying criminal conviction; therefore, collateral consequences cannot be presumed. Accordingly, at this juncture, the case is arguably moot. *See Islam*, 2016 WL 3943668, at *3 ("Where a habeas petitioner attacks only his sentence and not the conviction, his sentence has been fully served, and there are no collateral consequences that could be

eliminated by a successful attack on the sentence, the case is moot.").

### C. Proper Respondent

The Second Circuit has noted that "an essential aspect of the habeas corpus writ [is] that it acts upon the person who holds (the prisoner) in what is alleged to be unlawful custody[; therefore, i]n order for a court to entertain a habeas corpus action, it must have jurisdiction over the petitioner's custodian." *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (2d Cir. 1976). Petitioner initially, and correctly, identified LaManna, the Superintendent of the correctional facility in which he was incarcerated, as the respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."). However, petitioner was released from DOCCS custody. Accordingly, it is not clear who, if anyone, is holding petitioner in unlawful custody. Thus, it is also unclear whether the court retains jurisdiction over this action.

## IV. CONCLUSION

In sum, the court does not know petitioner's whereabouts and whether his release from DOCCS' custody precludes the advancement of this action. Accordingly, petitioner has thirty (30) days to update his address and respond to the other apparent impediments noted above.

**WHEREFORE**, for the foregoing reasons ,it is hereby

**ORDERED** that, within thirty (30) days of this Decision and Order, petitioner shall: (1) update his address with the court; and (2) file an affidavit, not to exceed fifteen (15) pages in length, detailing why his release has neither mooted the action nor deprived the court of jurisdiction. Petitioner is explicitly warned that, pursuant to Rule 10.1(c)(2) of the Local Rules

of Practice of the Northern District, "**All attorneys of record and *pro se* litigants must immediately notify the Court of any change of address,**" cases cannot proceed without litigants updating their addresses with the court, and, pursuant to Rule 41.2(b) of the Local Rules, "**Failure to notify the Court of a change of address in accordance with L.R. 10.1(b) may result in the dismissal of any pending action.**" Accordingly, petitioner must provide the Clerk of the Court with his present address; and it is further

**ORDERED** that, upon the filing by petitioner of the aforementioned documents, the Clerk is directed to return the file to the court for further review; and it is further

**ORDERED** that, if petitioner does not file a notification of his present address and an affidavit addressing the specified jurisdictional issues within thirty (30) days of the filing date of this Decision and Order, the court will dismiss the petition without further order of the court for failure to prosecute and comply with the court's orders; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order upon petitioner in accordance with the court's Local Rules of Practice.

July 25, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge